# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Apple iPhone 13<br>Seizure No. 2023250300008301-0004<br>("Target Device") | Case No. '23 MJ2239 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the    Southern    District of    California   , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Sec. 952, 960 | Importation of Controlled Substances |
| 21 U.S.C. Sec. 963 | Conspiracy to Import Controlled Substances |

The application is based on these facts:
See Attached Affidavit of Homeland Security Investigations (HSI) Special Agent Richard Lopez, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Richard Lopez, HSI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
   telephone    *(specify reliable electronic means).*

Date:    06/23/2023   

*Judge's signature*

City and state:   San Diego, California      Daniel E. Butcher, U.S. Magistrate Judge
*Printed name and title*

[Print]  [Save As...]  [Attach]  [Reset]

# ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

    Apple iPhone 13
    Seizure No. 2023250300008301-0004
    ("**Target Device**")

The **Target Device** is currently in the custody of Homeland Security Investigations and located at 2051 N. Waterman Avenue, Suite 101, El Centro, California 92243.

# ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of November 6, 2022, up to and including December 7, 2022:

a. tending to indicate efforts to import cocaine or some other federally controlled substance from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of cocaine or some other federally controlled substances from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of cocaine or some other federally controlled substance, from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of cocaine or other federally controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.

# AFFIDAVIT

I, Special Agent Richard Lopez, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device:

>Apple iPhone 13
>Seizure No. 2023250300008301-0004
>("**Target Device**")

as further described in Attachment A, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 952, 960, and 963 as further described in Attachment B. The requested warrant relates to the investigation and prosecution of Jacqueline Zamora-Sanchez ("Defendant") for importing approximately 5.42 kilograms of cocaine from Mexico into the United States. *See United States v. Jacqueline Zamora-Sanchez*, 22CR02912-BAS. The **Target Device** is currently in the custody of Homeland Security Investigations and located at 2051 N. Waterman Avenue, Suite 101, El Centro, California 92243.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

3. I am an investigative or law enforcement officer within the meaning of 18 U.S.C. § 2510(7); that is, an officer of the United States, who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516. I am a Special Agent with the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"), and have been so employed since November 2018. I am currently assigned to the

1

Assistant Special Agent in Charge ("ASAC") Calexico, California Office, Imperial Valley Border Enforcement Security Task Force ("IV-BEST"). I am cross-designated with the Drug Enforcement Administration ("DEA") and have the authority to conduct Title 21 investigations and enforcement activities. I have been involved with investigations for Title 21 offenses and am familiar with the Interagency Cooperation Agreement between DEA and ICE.

4. I have had formal and on-the-job training in controlled substance investigations, and I am familiar with the manner in which controlled substances, including cocaine, are imported, often into the United States from Mexico, packaged, marketed, sold, and consumed. Before HSI, I was employed as a police officer with the El Centro Police Department in El Centro, California between 2008 and 2018. Between April 2014 and October 2014, I was a Task Force Officer ("TFO") for IV-BEST, during which I participated in Title-III wiretap investigations involving the importation and distribution of controlled substances. I attended a six-month full-time Police Academy at the Ben Clark Public Safety Training Center in Riverside, California and graduated in April 2009. During the academy, I completed 12 hours of training specialized in crimes involving criminal substances. During my career, I have received specialized training in the subject of narcotics investigations from federal and state law enforcement agencies such as the DEA and HSI. For example, I have completed an academy class at the Federal Law Enforcement Training Center (FLETC) in Glynco, GA, which I graduated in June 2019. I have also received on-the-job training from my supervisors and colleagues. I have also had numerous discussions with senior law enforcement officers and agents, within my agency and others concerning controlled substances crimes and criminal activity. Through these conversations, I have been able to familiarize myself with the terminology used by drug-trafficking organizations (DTOs) specializing in cross-border Mexico-to-U.S. smuggling methods.

5. During my employment, I have investigated and participated in the investigation of illicit controlled substance trafficking occurring in the United States and

Mexico. I have participated in multiple investigations for controlled substance violations. During narcotics investigations, I have used a variety of investigative techniques and resources, including physical and electronic surveillance, undercover and confidential source buy operations, pen trap and trace devices, Title-III wiretaps, search warrants, and the analysis of telephone records. Further, I have participated in investigations in which drug traffickers relied heavily upon telephone communication and other electronic devices as a means of communicating. Finally, I have been trained in interviewing individuals who have been directly and indirectly involved in the importation, transportation, distribution and manufacturing of illegal drugs and controlled substances.

6. Based on my training and experience, and conversations with other law enforcement personnel, I have become familiar with the methods utilized in narcotics trafficking operations and some of the unique trafficking patterns employed by narcotics organizations. I know that drug traffickers often require the use of a telephone facility to negotiate times, places, schemes and manners for importing, possessing, concealing, manufacturing and distributing controlled substances and for arranging the disposition of proceeds from the sales of controlled substances. I know that professional drug operations depend upon maintaining their extensive contacts. The telephone enables drug traffickers to maintain contact with associates, suppliers and customers. I also know that drug traffickers sometimes use fraudulent information, such as fictitious names and false addresses, to subscribe to communication facilities, especially cellular phones. Through these investigations, my training and experience, and my conversations with other law enforcement investigators, I have become familiar with the methods used by narcotics traffickers to smuggle and safeguard narcotics, to distribute narcotics, and to collect and launder proceeds related to the sales of narcotics. I am also familiar with the methods employed by large-scale narcotics organizations in attempts to thwart detection by law enforcement including but not limited to the use of cellular telephone technology, counter surveillance techniques, false or fictitious identities and addresses, and coded communications.

7. Based on my training and experience, I am familiar with narcotics traffickers' methods of operation, including their methods of distribution, storage, and transportation of narcotics, their methods of collecting proceeds of narcotics trafficking, and their methods of laundering money to conceal the nature of the proceeds. Based on my training and experience, I know that drug trafficking at the retail level is largely a cash business. I know that drug traffickers often generate large amounts of unexplained wealth, and through financial transaction, attempt to conceal, disguise or legitimize unlawful proceeds, through domestic and international banks and their attendant services, and otherwise legitimate businesses which generate large quantities of currency. In addition, drug traffickers often use drug proceeds to purchase additional narcotics to perpetuate and promote the ongoing conspiracy. I know that drug traffickers often use cellphones to communicate with co-conspirators in furtherance of their money laundering activities. During the course of my employment, I have also become familiar with the ordinary meaning of controlled substance slang and jargon, and with the methods of packaging, consuming and transferring of controlled substances. I am also familiar with the manners and techniques of traffickers in cocaine, methamphetamine, heroin, marijuana, and fentanyl as practiced locally, including the importation from Mexico.

8. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the importation of narcotics may yield evidence:

a. tending to indicate efforts to import controlled substances from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**FACTS SUPPORTING PROBABLE CAUSE**

9. On December 6, 2022, Customs and Border Protection Officer ("CBPO") received a call information from an anonymous caller stating a vehicle bearing California license plate #9CRS644 might be concealing drugs. A referral was generated for the vehicle to be referred to secondary inspection.

10. At approximately 7:50 p.m. on December 6, 2022, a CBPO encountered Defendant as she applied for entry into the United States through the Dedicated Commuter "SENTRI" lanes at the Calexico, California West Port of Entry. Defendant was the driver, sole occupant, and registered owner of a Volkswagen Taos bearing California license plate #9CRS644. A CBPO obtained a negative Customs declaration from Defendant and received notification of the secondary referral for the vehicle. Defendant was handcuffed and escorted to the vehicle secondary office.

11. In secondary, anomalies were detected in the rear bumper of Defendant's

5

vehicle and a Human Narcotics Detection Dog alerted to the presence of narcotics coming from the rear bumper of the vehicle. During a thorough inspection of Defendant's vehicle, CBPOs located a black cellophane wrapped package concealed in the rear bumper. In total five (5) cellophane packages were retrieved from the rear bumper weighing approximately 5.42 kilograms. A sample from one of the packages tested positive for cocaine. Defendant was subsequently arrested for a violation of Title 21, United States Code, 952 and 960, Importation of a Controlled Substance.

12. Defendant was apprised of her *Miranda* rights and voluntarily waived them. During her post-arrest interview, During Defendant post-arrest interview she denied knowing there were drugs in her vehicle. Defendant stated she went to Mexicali, Baja California, Mexico to meet her boyfriend at her parent's residence. Defendant stated her boyfriend's father, Jesus Pena, sells drugs in Mexicali. Defendant stated he was aware she has a SENTRI card and crosses the border daily and he possibly had someone concealed the drugs in her vehicle. Defendant also consented to a download of the **Target Device**.

13. The **Target Device** was seized by a Customs and Border Protection Officer and all the property seized from Defendant was inventoried and uploaded into the CBP database. During her post-arrest interview, Defendant was shown the **Target Device** and identified the **Target Device** as belonging to her.

14. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Device**. In light of the above facts and my experience and training, there is probable cause to believe that Defendant was using the **Target Device** to communicate with others to further the importation of illicit narcotics into the United States. Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will

continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals, such as Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the **Target Device** for data beginning on November 6, 2022, up to and including December 7, 2022.

## METHODOLOGY

15. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

16. Following the issuance of this warrant, I will collect the **Target Device** and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

17. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

18. During Defendant post-arrest interview, she provided law enforcement with consent to download the **Target Device**, and a download was conducted. During a review of the download, it appeared that conversations were missing from Defendant's phone. Law enforcement is now seeking a warrant for the **Target Device** to identify evidence that may not have been captured during the consent download.

//
//
//
//
//
//
//
//
//
//
//
//
//

8

# CONCLUSION

19. Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the **Target Device** will yield evidence of Defendant's violations of Title 21, United States Code, Sections 952, 960 and 963. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachment A, and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Special Agent Richard Lopez
Homeland Security Investigations

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this __23rd__ day of June, 2023.

_____
Honorable Daniel E. Butcher
United States Magistrate Judge

## **ATTACHMENT A**

PROPERTY TO BE SEARCHED

The following property is to be searched:

>Apple iPhone 13
>Seizure No. 2023250300008301-0004
>("**Target Device**")

The **Target Device** is currently in the custody of Homeland Security Investigations and located at 2051 N. Waterman Avenue, Suite 101, El Centro, California 92243.

# ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of November 6, 2022, up to and including December 7, 2022:

a. tending to indicate efforts to import cocaine or some other federally controlled substance from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of cocaine or some other federally controlled substances from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of cocaine or some other federally controlled substance, from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of cocaine or other federally controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.